**FILED**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

DEC 14 2011

DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN RE APPOINTMENT OF SPECIAL PROSECUTOR )
)
)
)
)
)
)

No. 2011 Misc. 46

The Hon. Paul P. Biebel

Mike Toomin

## NOTICE OF MOTION

**TO:** Anita M. Alvarez, Cook County State's Attorney
Patrick T. Driscoll, Assistant State's Attorney
50 W. Washington St., Suite 500
Chicago, Illinois 60602

**PLEASE TAKE NOTICE** that on Thursday, December 22, 2011 at 9:00 a.m. we will appear before The Honorable Paul P. Biebel, in courtroom 101, at the Circuit Court of Cook County, Criminal Division, , and will then and there present the attached *Petition to Appoint a Special Prosecutor in the Matter of the Death of David Koschman.*

Locke E. Bowman

Locke E. Bowman
Alexa Van Brunt
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844

G. Flint Taylor
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
(773) 235-0070



EXHIBIT

B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

|  |  |  |
|---|---|---|
| IN RE APPOINTMENT OF SPECIAL PROSECUTOR | ) ) ) ) ) ) ) | No. 2011 Misc. ____<br><br>The Hon. Paul P. Biebel |

## PETITION TO APPOINT A SPECIAL PROSECUTOR
## IN THE MATTER OF THE DEATH OF DAVID KOSCHMAN

Petitioners NANCI KOSCHMAN, SUSAN PAZDERSKI, and RICHARD PAZDERSKI, by their undersigned attorneys, respectfully petition this Court pursuant to 55 ILCS 5/3-9008 for entry of an order appointing a special prosecutor to investigate whether criminal charges should be brought against any person in connection with the homicide of David Koschman in the spring of 2004 and whether, from 2004 to the present, employees of the Chicago Police Department and the Cook County State's Attorney Office (CCSAO) acted intentionally to suppress and conceal evidence, furnish false evidence, and generally impede the investigation into whether criminal charges should be filed in connection with Mr. Koschman's death. In support, Petitioners state:

### INTRODUCTION

1.       In the early hours of April 25, 2004 near the intersection of Division and Dearborn Streets in the City of Chicago, David Koschman, a slightly built young man from Mount Prospect, Illinois who had recently celebrated his 21st birthday, was punched in the face by one Richard J. ("R.J.") Vanecko, a former college football player who was 6'3" tall and weighed approximately 230 pounds. Vanecko was a nephew of then-Chicago Mayor Richard M. Daley as well as William Daley (now President Obama's Chief of Staff) and a grandson of former Mayor

Richard J. Daley (for whom he is named). Koschman fell to the ground, striking his head on the pavement, and was immediately rendered unconscious. He died two weeks later, on May 6th, from complications from blunt head trauma. The Cook County Medical Examiner ruled Koschman's death a homicide.

2.     The Chicago Police investigated. Although Vanecko and one of his companions (Craig Denham) fled the scene immediately after the assault, Vanecko's identity was ascertained no later than May 13th when another companion (Bridget McCarthy) admitted that she and her husband (Kevin McCarthy) were with Vanecko and Denham on the night in question and provided police with Vanecko's name. Vanecko was the only person in the vicinity of the confrontation who matched the description of Koschman's assailant.

3.     Nonetheless, the Police closed the investigation without charging anyone because, incredibly, they claimed to be unable to determine who punched Koschman. Equally surprising, the Police also found that whoever had thrown the punch had done so in self-defense because Koschman—though he was only 5'5" tall and weighed just 140 pounds—"was clearly the aggressor as corroborated by all of the witnesses interviewed." Supp. Police Report, November 10, 2004, at 13.[1] The Police statement that all interviewed witnesses identified Koschman as "the aggressor" is false. In fact, Koschman's companions and at least one independent witness at the scene told Police that Koschman was not being physically aggressive before Vanecko punched him. These four witnesses have since stated publicly that any statements in police reports to the effect that they identified Koschman as the aggressor misstate what they told the Police.

4.     The Police resolution of the Koschman investigation was approved by Assistant State's Attorney Darren O'Brien, then head of the Cook County State's Attorney's Felony

[1] Redacted copies of the November 10, 2004 report and all other publicly available police records of the Koschman investigation (printed from the *Chicago Sun-Times* website) are attached as Ex. A to this Petition.

Review Unit. According to Police records (the State's Attorney's file is inexplicably missing), O'Brien consulted with Police investigators, interviewed "all available witnesses," and concurred in the decision not to press charges. Supp. Police Report, November 10, 2004, at 13.

5. Earlier this year, in the wake of *Chicago Sun-Times* reporting on various irregularities in the Koschman investigation,[2] the Chicago Police re-opened the case. In late February 2011, after two months of investigation, the Police acknowledged for the first time that Vanecko was in fact the person who punched Koschman. Nonetheless, the Police again declined to press charges, finding once more that Koschman "was clearly the assailant in this incident" and that Vanecko had acted in self-defense. Supp. Police Report, February 28, 2011, at 8 (9 pages).

6. Cook County State's Attorney Anita Alvarez endorsed the outcome of the re-opened Chicago Police investigation, assuring *Sun-Times* reporters earlier this year that there was insufficient evidence to support criminal charges against Vanecko. Tim Novak, Chris Fusco, and Carol Marin, *Alvarez: Not Enough Evidence to Charge Daley's Nephew*, Chicago Sun-Times, March 20, 2011, at 11A.

7. This Petition is being filed because of Petitioners' concern that the investigation of David Koschman's death was influenced by R.J. Vanecko's membership in the most powerful political family in Cook County. Petitioners believe that had Vanecko not been a member of the powerful Daley family he would have been charged with the homicide. The handling of this matter by the Chicago Police and the Cook County State's Attorney's Office raises questions that cry out for objective, unbiased investigation, including: (a) whether Police investigators prepared false official reports; (b) whether Police investigators, ASA O'Brien, and/or other employees of the Cook County State's Attorney's Office conspired to cover up Mr. Vanecko's criminal

---

[2] The *Sun-Times* published approximately 20 news articles concerning its independent investigation into Koschman's death and the Police and State's Attorney's investigation. The full set of *Sun-Times* stories is attached as Ex. B.

responsibility for Koschman's death; and (c) whether Mr. Vanecko should be charged in connection with that death.

8.     Cook County State's Attorney Anita Alvarez is "interested" in the outcome of such an investigation. *See* 55 ILCS 5/3-9008. O'Brien, who continues to be employed in the State's Attorney's Office, is necessarily a subject of and/or a witness in the investigation. And Alvarez has, in any event, already publicly committed herself and her office to the position that the Koschman investigation reached the proper result. An independent Special Prosecutor must therefore be appointed to undertake an unbiased, disinterested investigation of the Koschman homicide and the official actions taken in response to it.

9.     All persons are entitled to the protections of our Bill of Rights, including the presumption of innocence. Petitioners believe that the question of Mr. Vanecko's possible criminal responsibility must not be rushed or pre-judged. Just as important, though, is the principle that all persons—regardless of wealth, status or family connection—are equal before the law. Thus, Mr. Vanecko is not entitled to escape prosecution simply because he is the nephew of former Mayor Daley.

## THE PETITIONERS

10.     Nanci Koschman is the mother of David Koschman. Susan Pazderski is Nanci Koschman's sister and David Koschman's maternal aunt. Richard Pazderski, Susan's husband, is David Koschman's uncle. Ms. Koschman, Ms. Pazderski, and Mr. Pazderski seek nothing more and nothing less than a just, unbiased investigation into David's homicide.

## IRREGULARITIES IN THE KOSCHMAN INVESTIGATION

11.     The Chicago Police and Cook County State's Attorney's investigation of the Koschman homicide in 2004 and the reinvestigation of the homicide earlier this year were

4

plagued with inexplicable lapses, false official records, and procedural irregularities. These irregularities suggest the possibility that, in violation of the criminal law of this state, officials in the Police Department and the State's Attorney's Office may have been led by favoritism or other improper motives to obstruct the investigation so that Mayor Daley's nephew did not face criminal charges.

### Incompetence or Worse: Chicago Police Fail to Identify Vanecko as the Assailant in 2004

12.     Koschman's death followed an altercation involving two groups who passed each other on a crowded Division Street sidewalk in the early morning hours of April 25, 2004. Koschman's group included, in addition to the victim, four high school friends of Koschman's who had accompanied Koschman downtown. Vanecko's group included two other men, Craig Denham and Kevin McCarthy, and a woman, Bridget McCarthy, who was Kevin's wife. As the two groups passed each other, Koschman bumped into Denham and angry, obscene words were exchanged. The argument between the two groups became heated, but all witnesses agree that only a single blow was struck—the punch that knocked out Koschman and eventually killed him.

13.     Vanecko's identity was not immediately known, since he and Denham fled the scene immediately after Koschman fell to the ground and Kevin McCarthy falsely told officers that he did not know the identities of the two men who had fled. *See* Supp. Police Report, May 20, 2004, at 5. On May 13th, however, Bridget McCarthy admitted that she and her husband Kevin had been at a party with Vanecko and Denham prior to the assault and she provided Vanecko's name to the police. Supp. Police Report, November 10, 2004, at 8-9.

14.     Moreover, the police reports contain descriptions of Vanecko and his three companions, provided by the Koschman group and independent bystanders. Vanecko was by far the largest male in his group, described as between 6'0" and 6'2" tall and weighing between 190

5

and 230 pounds. *See* Supp. Police Report, May 13, 2004, at 3-4. The other two men were much smaller; neither was even close to six feet or two hundred pounds. *Id.* According to the reports, Koschman's companions described the person who punched Koschman as "the larger white male" and "the largest of the male whites" in the other group. Supp. Police Report, November 10, 2004, at 6, 7.

15.     Despite these witness statements, the 2004 Chicago Police investigation was closed without charges, in part because the police claimed to be unable to determine the identity of the person who had thrown the fatal punch. Supp. Police Report, November 10, 2004, at 13 ("[T]he actual identity of the subject who either pushed or punched David Koschman could not positively be determined."). Such a blatant failure to connect the dots has the hallmarks of an investigation governed by politics, not professionalism.

### False Police Reports: Koschman is Falsely Identified as "the Aggressor" in the Attack that Led to his Death.

16.     Koschman, who was just 5'5" tall and weighed only 140 pounds, was vastly smaller than Vanecko, a former college football player who, as stated above, weighed over 200 pounds and was more than six feet tall. Undisputedly, Vanecko's punch was the only physical blow in the altercation between Vanecko and Koschman. Nonetheless, the Chicago Police investigation was terminated in 2004 without charging Vanecko partly because, in the words of a Chicago Police investigative report written at that time, Koschman "was clearly the aggressor" during the interactions that led to his death. Supp. Police Report, November 10, 2004, at 13. That report further asserts that this finding was "corroborated by all of the witnesses interviewed." *Id.*

17.     The Koschman homicide investigation was re-opened earlier this year in the wake of extensive reporting about the incident by the *Chicago Sun-Times*. But after reexamining the

evidence and re-interviewing the witnesses, the Chicago Police again declined to press charges in Koschman's death based on the renewed finding that Koschman "was clearly the assailant in this incident" and that the taller, heavier Vanecko had acted in self-defense when he punched Koschman. Supp. Police Report, February 28, 2011 (9 pages), at 8.

18.     Four witnesses (three of Koschman's friends and Michael Connolly, an independent bystander to the assault) have all stated publicly that the 2004 and 2011 police reports are false. The three Koschman friends told the *Sun-Times* that they informed police that Koschman was *not* being physically aggressive and that Koschman was "sucker punched." Tim Novak, Chris Fusco, and Carol Marin, *Self-Defense or a 'Sucker Punch?'*, Chicago Sun-Times, Feb. 28, 2011, at 14. They have each stated that they are willing to take polygraph examinations to confirm their veracity. Tim Novak, Chris Fusco, Carol Marin, *Alvarez: Not Enough Evidence to Charge Daley Nephew*, Chicago Sun-Times, March 20, 2011, at 11A. Connolly, the independent bystander, responded to a statement from the State's Attorney's Office that Koschman initiated the physical confrontation, calling it a "flat-out" lie and insisting that Koschman was not the aggressor. Chris Fusco, Tim Novak, and Carol Marin, *Witness: Prosecutors' Statement a 'Flat-Out Lie'*, March 3, 2011, at 2.

19.     Based on these public statements, there is probable cause to believe that the 2004 and 2011 police reports, which state that "all witnesses" identified Koschman as the aggressor, may have been deliberate falsehoods.

### Procedural Irregularities Abound: Missing Documents and Inexplicable Lapses

20.     A series of procedural irregularities casts further suspicion upon the integrity of the Koschman homicide investigation. Among these irregularities are the following:

7

a. There is no recorded police investigative activity in this matter from the immediate aftermath of the assault (when detectives interviewed only Kevin McCarthy and Michael Connolly) until May 10, 2004—more than two weeks following the attack and four days after Koschman had passed away and the Cook County Medical Examiner had classified his death as a homicide. *See* Supp. Police Report, May 20, 2004; Supp. Police Report, November 10, 2004.

b. When the police investigation did resume on May 10th, a completely new team of detectives had been assigned to the case, including Chicago Police Detective Ronald Yawger. *See* Supp. Police Report, November 10, 2004, at 4.

c. The new detectives made no attempt to question Vanecko prior to May 20th, despite the fact that they had learned his name no later than May 13th, a full week earlier. *Id.* at 13.

d. The police claim to have made the decision not to charge Vanecko on May 20th, but the reports documenting the reasons for that decision (*i.e.*, Vanecko couldn't be identified as the assailant and Koschman was "the aggressor") were not filed until nearly six months later, in November 2004. *Id.* at 1, 13.

e. The file of Assistant State's Attorney Darren O'Brien, who also interviewed the witnesses to the assault and concurred that charges should not be filed, is missing. Carol Marin, Time Novak, Chris Fusco, and Don Moseley, *Self-Defense or a 'Sucker Punch?'*, Chicago Sun-Times, February 28, 2011, at 12. State's Attorney Anita Alvarez has confirmed that she has been unable to locate any of the files prepared by Mr. O'Brien during the Koschman

investigation. Tim Novak and Chris Fusco, *More Missing Files in Koschman Case*, Chicago Sun-Times, July 25, 2011, at 18-19.

    f.   In July of this year, four months after the termination of the investigation, officers in Area 3 discovered a second set of "missing files" from the Koschman case that had not been turned over to the detectives in charge of the 2011 investigation. *Id.* at 18. Police turned over those files to reporters as well as previously undisclosed handwritten notes of Detective Yawger, including notes from a witness interview in which—in contrast to what is contained in the previously released reports—the witness tells Yawger that on the night of the incident, when "arguing became more heated," the "larger of the three guys [*i.e.*, Vanecko] becomes very aggressive." Tim Novak and Chris Fusco, *Missing Police File Says Daley Nephew was 'Very Aggressive'*, Chicago Sun-Times, September 12, 2011, at 6.

    g.   Also among the newly released documents is a notation on the back of a Chicago Police General Progress Report, confirming that the Police knew Vanecko was Daley's nephew. *Id.* ("V Dailey [sic] sister son").

    h.   Despite the discovery of this evidence, a representative from the Police has stated "that none of the new information would have changed the outcome of the investigation." *Id.* The Department has refused to re-open the case.

### Members of the Cook County State's Attorney's Office May Have Participated in Investigative Misconduct

21.    A Chicago Police report states that, on May 20, 2004, Assistant State's Attorney Darren O'Brien—who was then the head of the Felony Review unit—personally traveled to Area 3 police headquarters and interviewed the investigating detectives and the witnesses to the

Koschman homicide. Supp. Police Report, November 10, 2004, at 13. Though these witnesses have since asserted that they informed law enforcement that Koschman was not the aggressor in the incident, Mr. O'Brien concluded that there was insufficient evidence to charge or further investigate Vanecko.

22. In addition, evidence gathered thus far suggests that witnesses may have told O'Brien directly that Koschman was *not* the aggressor in the altercation with Vanecko; that O'Brien may have known that the police reports regarding this matter were false; that O'Brien may have disregarded incriminating evidence; that O'Brien's files are no longer available; and that persons within the Cook County State's Attorney's Office, including O'Brien, may have concealed information that Vanecko is criminally responsible for Koschman's death.

### CONFLICTS OF INTEREST WITHIN THE STATE'S ATTORNEY'S OFFICE NECESSITATE THE APPOINTMENT OF A SPECIAL PROSECUTOR TO INVESTIGATE POSSIBLE CRIMINAL WRONGDOING DURING THE KOSCHMAN HOMICIDE INVESTIGATION

23. Illinois law provides for the appointment of a special prosecutor in cases where the elected State's Attorney for the County "is interested in any cause or proceedings … which it is or may be his duty to prosecute or defend[.]" 55 ILCS 5/3-9008. The appointment of a special prosecutor can occur at any stage in a case, even before formal charges are filed. *See Baxter v. Peterlin*, 156 Ill. App. 3d 564, 566 (3d Dist. 1987). Thus, special prosecutors have frequently been appointed to investigate allegations of criminal wrongdoing. *See, e.g., People v. Pawlaczyk*, 189 Ill. 2d 177 (2000); *Matter of Special Prosecutor*, 164 Ill. App. 3d 183 (5th Dist. 1987) (judgment later vacated on unrelated grounds); *People v. Sears*, 49 Ill. 2d 14 (1971).

24. The court's jurisdiction under the special prosecutor statute may be invoked by the court, by the State's Attorney's Office or, as here, by a private citizen or group of citizens. *See Baxter*, 156 Ill. App. 3d at 566; *In re Appointment of Special State's Attorney*, 305 Ill. App. 3d

749, 758 (2d Dist. 1999). Though the Circuit Court hearing the petition maintains discretion in determining whether the State's Attorney's "interest" in the case warrants the appointment of a special prosecutor, it is the duty of the court to ensure that such judicial discretion is "exercised to promote the underlying policy of a just, fair and impartial hearing." *People v. Lanigan*, 353 Ill. App. 3d 422, 430 (1st Dist. 2004) (quotation omitted).

25.     Accordingly, this Court must undertake two inquiries to determine whether to appoint a special prosecutor: (a) whether it may be the Cook County State's Attorney's "duty" to investigate whether crimes occurred in the handling of the Koschman matter and to prosecute those crimes; and (b) whether State's Attorney Alvarez has an "interest" that disqualifies her and her office from undertaking the necessary investigation and prosecution. Since both inquiries are satisfied, a special prosecutor must be appointed here.

**Vanecko May Be Criminally Responsible for Koschman's Death
And There May Have Been Criminal Misconduct in the Investigation**

26.     The recently reported statements of David Koschman's friends and of an independent bystander suggest that R.J. Vanecko may be criminally liable for causing Koschman's death by punching Koschman in the head. Vanecko could be criminally responsible either because Vanecko knew that his acts created a strong probability of death or great bodily harm (*see* 720 ILCS 5/9-1(a)(2)) or because Vanecko's actions, though not intended to cause Koschman's death, were reckless and were "such as are likely to cause death or great bodily harm to some individual" (*see* 720 ILCS 5/9-3).

27.     It is indefensible, on this record, for law enforcement to turn a blind eye to a homicide perpetrated on the streets of Chicago. *First*, contrary to the assertions in the police reports, the bystanders to Vanecko's assault are, at best, divided on whether Koschman was "the aggressor" prior to his death. *Second*, whether Koschman was or was not "the aggressor" is not

dispositive of Vanecko's criminal responsibility—an obvious proposition that the police and ASA O'Brien apparently did not appreciate.

28.     Self-defense justifies the use of deadly force only where the perpetrator is himself threatened with force that "will cause death or great bodily harm" or that constitutes "a forcible felony." *People v. Lee*, 243 Ill. App. 3d 1038, 1043 (1st Dist. 1993). Thus, objective, unbiased investigators must determine whether Koschman threatened Vanecko with great bodily harm. If Koschman did not, Vanecko may be chargeable with first- or second-degree murder. *Cf. U.S. ex rel Baker v. Acevedo*, No. 08 C 918, 2008 WL 1943218, at *6 (N.D. Ill. May 1, 2008) (denying prejudice prong of habeas petitioner's *Strickland* claim since evidence overwhelmingly showed that the petitioner's actions "were disproportionate to any evidence of provocation"); *U.S. ex rel Gilford v. Carter*, No. 98 C 3665, 1999 WL 543188, at *7-*8 (N.D. Ill. July 22, 1999) (denying habeas petition since evidence presented at trial supported conclusion that defendant's self-defense theory was unwarranted).

29.     Moreover, objective, unbiased investigation could determine that Vanecko acted recklessly and that he committed the offense of involuntary manslaughter. *See* 720 ILCS 5/9-3. On that theory of prosecution, the defense of self-defense would be unavailable. *See People v. DeMumbree*, 98 Ill. App. 3d 22, 25 (1st Dist. 1981) ("Because the theories of self-defense or defense of a third party presuppose an intention to kill or cause great bodily harm, these theories are inconsistent with the crime of involuntary manslaughter which, by definition, is evidenced by the mental state of recklessness, not intent.").

30.     At this stage, none of these questions is free of doubt. Nor should any of them be pre-judged. But what is abundantly clear is that the evidence demands a thorough examination

and additional investigation to determine whether Vanecko was justified in his actions or whether he should be indicted for Koschman's homicide.

31.     The evidence also demands an objective, unbiased investigation of whether there was criminal misconduct by the law enforcement personnel responsible for the prior investigation of Koschman's death. *First*, there is probable cause to believe that police investigators and persons within the Cook County State's Attorney's Office, including ASA O'Brien, may have committed obstruction of justice. The obstruction of justice statute, 720 ILCS 5/31-4, criminalizes, among other things, "furnishing of false information" in a criminal investigation. There is reason to believe that the police reports documenting the Koschman investigation "furnished false information"—specifically by falsifying eyewitness accounts of Koschman's actions prior to his death. Those reports may also implicate O'Brien in the misconduct, since they state that O'Brien interviewed "all available witnesses" and concurred with the police findings. These discrepancies, in conjunction with the missing Felony Review files and the recently discovered General Progress Notes, suggest that O'Brien and/or others in the Cook County State's Attorney's Office, in conspiracy with Chicago Police Detectives, may have obstructed Vanecko's prosecution in violation of 720 ILCS 5/31-4.

32.     *Second*, and on these same facts, there is also probable cause to believe Chicago Police Detectives and others within the Cook County State's Attorney's Office, including ASA O'Brien, could have conspired to commit official misconduct in violation of 720 ILCS 5/33-3.[3] A police officer's duty is to conserve the peace and enforce the criminal law. *See* 65 ILCS 5/11-1-2(a); Chicago, Ill. Code § 2-84-220 *et seq*. A State's Attorney's foremost responsibility is to

---

[3] Section 33-3 states in part that a "public officer or employee or special government agent commits misconduct when, in his official capacity or capacity as a special government agent, he ... [i]ntentionally or recklessly fails to perform any mandatory duty as required by law; or knowingly performs an act which he knows he is forbidden by law to perform[.]"

"commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 720 ILCS 5/3-9005. If O'Brien and/or others in the Cook County State's Attorney's Office acted with Chicago Police to protect Vanecko and the Daley family over the fair administration of the state's criminal justice system then, under 720 ILCS 5/33-3, prosecutors and police may be indicted for intentionally or recklessly failing to perform their mandatory duties as required by law.[4]

33.    Like Vanecko, the police and prosecutors are entitled to the presumption of innocence. The question of their criminal responsibility should likewise not be rushed or prejudged. But, just as clearly, their responsibility in this matter must be decided by an objective investigator, free of conflict or loyalty.

**State's Attorney Alvarez Is "Interested" In This Investigation**

34.    The continuing failure of the Chicago Police and the CCSAO to thoroughly and fairly investigate R.J. Vanecko for assaulting David Koschman may be attributable to conflicts of

---

[4] It is unlikely that anyone implicated here could assert the statute of limitations as a defense to these crimes. Any overt actions taken in furtherance of the objective of preventing Vanecko's prosecution, including suppressing evidence during the 2011 re-investigation, are sufficient to establish a "continuing" conspiracy for purpose of tolling the statute of limitations. *See, e.g., Fiswick v. U.S.*, 329 U.S. 211, 216 (1946) ("The statute of limitations, unless suspended, runs from the last overt act during the existence of the conspiracy."); *People v. Link*, 365 Ill. 266, 280-81 (1937) ("In prosecutions for conspiracy the statute of limitations does not begin to run from the time the conspiracy was entered into but, on the other hand, from the commission of the last overt act in furtherance of the conspiracy."). O'Brien and the original detectives may have participated in a conspiracy to conceal evidence—not just in 2004, but thereafter, including during the 2011 re-investigation. *See Grunewald v. U.S.*, 353 U.S. 391, 405 (1957) (an act of concealment that promotes a conspiracy's criminal objective constitutes an overt act in furtherance of the conspiracy). In particular, they made continuing assertions that Vanecko acted in self-defense (despite evidence to the contrary), and may have failed to turn over important documents when the investigation resumed in 2011. These actions could constitute "overt acts" in continuation of the conspiracy, and render them criminally liable. *See U.S. v. Maloney*, 71 F.3d 645, 659 (7th Cir. 1995) (finding obstruction of justice charge against county judge was timely because "the main criminal objective, to fix cases whenever feasible, was neither accomplished nor abandoned as long as Judge Maloney remained on the bench.... Concealment ... was an overt act in furtherance of the conspiracy's main objectives."). Under this theory, the prosecution of law enforcement personnel for obstruction of justice and/or official misconduct would be timely.

interest within the Cook County State's Attorney's Office. These conflicts compel this Court to appoint a special prosecutor who can implement an unbiased investigation into both David Koschman's homicide and possible ongoing obstruction of justice and official misconduct by the Chicago Police and individuals within the Cook County State's Attorney's Office. At the heart of this imperative is the well-established maxim under Illinois law that "an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties.'" *People v. Courtney*, 288 Ill. App. 3d 1025, 1031–32 (3d Dist. 1997) (quotation omitted).

35.     A State's Attorney is "interested" for the purposes of appointing a special prosecutor in three situations: "(1) where the attorney is interested as a private individual in the litigation, (2) where the attorney is an actual party to the litigation, and (3) where the attorney's continued participation would create the appearance of impropriety in the prosecution of a defendant." *People v. Bickerstaff*, 403 Ill. App. 3d 347, 352 (2d Dist. 2010) (citing *People v. Lang*, 346 Ill. App. 3d 677, 680-81 (2d Dist. 2004)). Here, there is clear and specific evidence[5] demonstrating that the participation of the Cook County State's Attorney's Office in an investigation into Koschman's death and potential official misconduct during the prior investigations would exacerbate the appearance of impropriety and prevent the fair administration of justice. *See People v. Courtney*, 288 Ill. App. 3d 1025, 1032 (3d Dist. 1997) (the "rigid rule" prohibiting an attorney from representing conflicting interests "is designed to protect against an actual conflict of interest and the *appearance* of such a conflict.") (emphasis in original). The specific conflicts that mandate the appointment of a special prosecutor here are twofold.

36.     *First*, the CCSAO faces an institutional conflict of interest arising from the fact that one of its employees, ASA O'Brien, is both (a) a key witness in the investigation into how

---

[5] The "[a]ppointment of a special prosecutor ... will only be warranted based upon specific factual allegations of 'interest' within the meaning of section 3-9008 of the Counties Code." *McCall v. Devine*, 334 Ill. App. 3d 192, 205 (1st Dist. 2002).

law enforcement handled the Koschman case and (b) a potential subject of an investigation into whether obstruction of justice and official misconduct was committed in the course of that investigation. In either circumstance, O'Brien's close connection to the case raises the inexorable specter of impropriety and requires the appointment of a special prosecutor.

37.     Illinois courts have frequently found a conflict of interest where a State's Attorney served as both the prosecutor and a key eyewitness in a case. *See, e.g., Sommer v. Goetze*, 102 Ill. App. 3d 117, 120 (3d 1981) (finding trial judge abused discretion by not appointing special prosecutor where an assistant State's Attorney was the complainant and the key eyewitness); *People v. Moretti*, 349 Ill. App. 67, 76 (1st Dist. 1952) ("The basis for the state's attorney's disqualifying himself was that he was a prospective witness and might be called to give evidence. Courts have so often condemned lawyers for appearing as witnesses in a cause which they represent, that it was clearly the duty of the prosecutor to disqualify himself when it appeared to him that there was a prospect of his being a witness. That is a sufficient interest within the meaning of the statute.").

38.     As the head of Felony Review and as the Assistant State's Attorney assigned to the case (and assuming usual procedure was followed), O'Brien was in charge of determining whether to prosecute Vanecko for Koschman's homicide. If usual practice was followed, O'Brien would have reviewed each of the police reports, consulted with the investigating detectives, and interviewed the key witnesses to the incident. He has stated it was on the basis of this evidence— or lack thereof—that he chose not to press charges in the case. *See* Chris Fusco, Tim Novak, and Carol Marin, *Witness: Prosecutors' Statement a 'Flat-Out Lie'*, March 3, 2011, at 2. It was also O'Brien who would have, in the ordinary course, filled out the Felony Review paperwork that is now missing from the State's Attorneys' Office. The importance of O'Brien's testimony in any

16

future legal proceedings is plain, and compels the conclusion that the Cook County State's Attorney's Office should not be permitted to further investigate Koschman's homicide or official misconduct committed in the course of previous investigations of that matter.

39.     Furthermore, if persons within the Cook County State's Attorney's Office were to be indicted for obstructing justice or committing official misconduct, there can be no question that the involvement of the Cook County State's Attorney in any forthcoming investigation would create an appearance of impropriety sufficient to warrant the appointment of neutral counsel. *Cf. In re Appointment of Special Prosecutor*, 388 Ill. App. 3d 220, 223-24 (3d Dist. 2009) (citing without criticism the trial court's holding that the State's Attorney's office was "interested" in the proceedings because of allegations that assistant State's Attorneys were suspected of committing civil and criminal misconduct within the scope of their employment).

40.     Moreover, the personal disqualification of O'Brien or other direct participants in the investigation would not be not sufficient to overcome the appearance of impropriety in this case. The entire Cook County State's Attorney's Office must be barred from further investigating and prosecuting the case.

41.     In determining whether the State's Attorney's office should be disqualified in its entirety from prosecuting a case, a court must weigh countervailing considerations, including the burden on the prosecutor's office if the entire office is disqualified; the remoteness of the connection between the State's Attorney's office and the alleged conflict of interest; and the extent to which the public is aware of the alleged conflict of interest. *See People v. Lang*, 346 Ill. App. 3d 677, 683 (2d Dist. 2004). In *Lang*, the Appellate Court disqualified the State's Attorney's office from prosecuting a criminal case in which an assistant State's Attorney served as a key eyewitness, finding that the assistant's participation created the "improper appearance

17

that the State was too involved with the underlying case to be fair in its prosecution of the defendant." *Id.* at 684. The court also held that the relationship between the alleged conflict of interest and the State's Attorney's office was not overly remote, because it directly involved the conduct of an assistant State's Attorney, and that the disqualification of the office would not be overly burdensome since it was "a rare case" in which a State's Attorney is named as a testifying witness. *Id.* at 685.

42.     The reasoning in *Lang* is equally pertinent here. The detailed (and incongruous) facts that have emerged thus far suggest that the State's Attorney's Office has a decided interest in preventing Vanecko's prosecution, an untoward perception for an office charged with ensuring the assiduous investigation and prosecution of criminal offenders.

43.     As in *Lang*, the relationship of the State's Attorney's Office to this case is far from remote. Even if any employee of the State's Attorney's Office were warranted, O'Brien, at a minimum, would be a witness in any prosecution of other law enforcement officials. Thus, if the Cook County State's Attorney remains the prosecuting authority in the Koschman case, it will only further solidify the public's perception that the investigation is biased and its results unreliable.

44.     In addition, the circumstances at issue here—in which multiple law enforcement agencies are subject to investigation for failing to investigate and prosecute a member of a powerful political family—are unusual. There is little risk that the appointment of a special prosecutor in a case involving such potentially widespread conspiratorial action to avert the prosecution of a single high-profile suspect could lead to the disqualification of the CCSAO in future, wholly unrelated cases. *Contrast McCall v. Devine*, 334 Ill. App. 3d 192, 205 (1st Dist. 2002) (finding the appointment of a special prosecutor was unwarranted where the petitioner

18

alleged that the State's Attorney and the Chicago Police Department were so intertwined as to prohibit an impartial investigation into a fatal suspect shooting, since "well over 90% of the cases prosecuted by the Cook County State's Attorney's office are ... investigated and brought by the Chicago police department" so that granting the petition "would open the door to requiring a special prosecutor to be appointed any time a police officer is suspected of wrongdoing"). Thus, even though "the importance of maintaining the public's esteem for the State's Attorney's office and the integrity of the criminal justice system outweighs the resulting inconvenience to that State's Attorney's office[,]" *Lang*, 346 Ill. App. 3d at 685, the appointment of a special prosecutor in this case is unlikely to unduly burden the Cook County State's Attorney's Office.

45.　　Finally, there is no question that the Koschman case was and continues to be a hot button issue in Chicago, particularly following the *Sun-Times*' extensive coverage of the investigation in 2011. As a result of the widespread news coverage, much of which has appeared on the front page (*see* Ex. B), the public is well-apprised of the conflicts of interest at issue here. *See Lang*, 346 Ill. App. 3d at 683. Public awareness has been further broadened by articles specifically calling for the appointment of an independent prosecutor in light of the CCSAO's interest in the case. *See* Carol Marin, *Why Won't Alvarez Answer Questions*, Chicago Sun-Times, March 23, 2011, at 26. Even State's Attorney Alvarez has gone on record in the past to voice her support for the appointment of an independent investigator. *See* Tim Novak and Carol Marin, *Alvarez Wants Investigation of Police*, Chicago Sun-Times, March 25, 2011, at 7. This case is unlikely to disappear without a full and fair investigation into the circumstances of David Koschman's death.

46.　　*Second,* State's Attorney Anita Alvarez retains a clear political—and personal— interest in the case. *See Baxter*, 156 Ill. App. 3d at 567 ("[A] political alliance may create

sufficient conflict of interest to require appointment of a special prosecutor."). Despite the suspicious circumstances surrounding the Koschman investigation, Alvarez has publicly defended the work of the Chicago Police and the Cook County State's Attorney's Felony Review unit, insisting to *Sun-Times* reporters that there was insufficient evidence to charge Vanecko. *See* Tim Novak, Chris Fusco, Carol Marin, *Alvarez: Not Enough Evidence to Charge Daley's Nephew*, Chicago Sun-Times, March 20, 2011, at 11A. Though O'Brien is a witness in and potential subject of an investigation into official misconduct and obstruction of justice in the Koschman matter, Alvarez has already committed herself and her office to the position that employees within the State's Attorney's Office and the police are innocent of wrongdoing. Obviously, Alvarez is in no position now to conduct the kind of probing and objective "fresh look" that this matter so urgently requires.

### The Appointment of a Special Prosecutor Will Ensure That These Conflicts Do Not Prevent the Fair Administration of Justice

47. The public and David Koschman's family deserve a fair investigation into the suspicious circumstances surrounding this homicide on the streets of Chicago. Thus far, calls for the appointment of an unbiased investigator have gone unheeded.[6] This case, which has now

---

[6] Over the past year, various attempts have been made to initiate an independent investigation into the Koschman case. On March 25, 2011, in response to a request from State's Attorney Alvarez, the Illinois State Police (ISP) agreed to review how the Chicago Police Department handled the investigation. However, weeks later the ISP did an about-face and refused to conduct the investigation. Tim Novak and Chris Fusco, *State Police Flip, Won't Probe Koschman Death*, Chicago Sun-Times, April 5, 2011, at 8. During this same time period, Chicago City Inspector General (IG) Joseph Ferguson commenced his own investigation into the Koschman case. Tim Novak and Chris Fusco, *New Investigation of Koschman Case*, Chicago Sun-Times, March 30, 2011, at 5. But Ferguson's jurisdiction is limited to the conduct of current city government employees. He does not have the authority to investigate former City employees or individuals employed by the County or State. Chicago, Ill. Code § 2-56-50. Thus, Ferguson is unable to investigate how ASA O'Brien, State's Attorney Alvarez, or the CCSAO in general managed the Koschman case. Alvarez has also blocked efforts by the County IG, Patrick Blanchard—who does have the authority to investigate the CCSAO—to examine the case. Tim Novak and Chris Fusco, *Anita Alvarez Blocks Probe of her Office on David Koschman Case*, Chicago Sun-Times, May 5, 2011. Moreover, even if Blanchard and Ferguson were granted full access to the government entities implicated in this case, the Inspector General only has the power to issue investigative reports into allegations of official misconduct;

been closed for over eight months, cannot be swept under the rug by officials who might prefer not to have to face inconvenient facts.

48.     The appointment of a special prosecutor will serve the public interest. By appointing independent counsel, this Court will ensure that necessary resources will be applied to an objective and unstinting investigation into whether R.J. Vanecko is criminally liable for David Koschman's death and whether employees with the Chicago Police Department and the Cook County State's Attorney's Office committed misconduct in the course of investigating the Koschman case, both in 2004 and over the past year. This extraordinary remedy is essential not only to safeguard public trust in the State's legal system, but also to ensure that the administration of justice is not subverted by those who wield political power.

the offices lack the authority to convene a grand jury or to initiate a prosecution upon a finding of illegal activity. Chicago, Ill. Code § 2-56-60; Cook County, Ill. Code § 2-284.

## CONCLUSION

For the foregoing reasons, Petitioners request that this Court appoint a special prosecutor to investigate whether criminal charges should be brought against any person in connection with the homicide of David Koschman in the spring of 2004 and whether, from 2004 to the present, employees of the Chicago Police Department and the Cook County State's Attorney Office acted intentionally to suppress and conceal evidence, furnish false evidence, and generally impede the investigation into Mr. Koschman's death.

Respectfully submitted,

**NANCI KOSCHMAN**
**SUSAN PAZDERSKI**
**RICHARD PAZDERSKI**

By: _____
One of their attorneys

Locke E. Bowman
Alexa Van Brunt
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844

G. Flint Taylor
The People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 606
(773) 235-0070

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served the foregoing Notice of Motion and Petition to Appoint a Special Prosecutor in the Matter of the Death of David Koschman by hand delivery before the hour of 5:00 p.m. on Wednesday, December 14, 2011 upon:

Anita M. Alvarez
Cook County State's Attorney
50 W. Washington St., Suite 500
Chicago, Illinois 60602

Patrick T. Driscoll, Jr.
Assistant State's Attorney & Bureau Chief
Civil Action Bureau
50 W. Washington St., Suite 500
Chicago, Illinois 60602

Locke E. Bowman