CDT 14-1990 2014.06.02 10:32:59

In the United States District Court for the
Northern District of Illinois, Eastern Division

Nanci Koschman, individually and as Admin. of the
Est. of David Koschman, dec'd,
                                              Plaintiff,

                            vs.                                          No.: 14 cv 2041

The City of Chicago, *et al.*,                                          Judge Pallmeyer

                                              Defendants.

<u>Darren O'Brien's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

Darren O'Brien states as follows:

<u>Summary of the Defendant's Legal Contentions</u>

Counts I (42 U.S.C. §1983), VI (Intentional Infliction of Emotional Distress) and VII
(Conspiracy to Intentionally Inflict Emotional Distress) are the only three claims directed at
O'Brien. All three are untimely and barred by the statute of limitations. O'Brien, even if the claims
are current, enjoys absolute immunity under federal and state law since his alleged actions were part
of the prosecutorial function he served and his motives, whatever they may be, are not relevant.
O'Brien's alleged acts, even if true and not absolutely immune, were not a proximate cause of any
alleged injury plaintiff sustained. O'Brien joins the other state's attorney defendants' motion to
dismiss [Docket. # 87] to the extent it asserts that Illinois sovereign immunity deprives this court of
subject matter jurisdiction. The complaint against him should be dismissed with prejudice since the
plaintiff will never be able to state a claim on which relief can be granted.

Plaintiff's Allegations[1]

On April 25, 2004 there was an altercation between David Koschman and his three friends and defendant Vanecko and his three friends that resulted in Koschman's death on May 6, 2004. (Complaint, ¶¶ 33-39, subsequent citations to the complaint are just to the paragraph number '¶ X') Koschman's friends and a passerby told police, by description and not by name, that Vanecko punched or pushed Koschman. (¶ 41) Mr. and Mrs. McCarthy and Craig Denham, Vanecko's three friends, repeatedly denied his involvement. (¶¶ 41, 46 and 71) By May 19, 2004 police 'knew' that Vanecko punched Koschman. (¶¶ 58, 63-66) However, at lineups on May 20th, Koschman's three friends and other witnesses were unable to identify Vanecko. (¶¶ 67-68)    In late May, 2004 CPD Det. Yawger met plaintiff and lied telling her that her son was the aggressor. Yawger told her that she was opposed by powerful forces and any attempt to sue would be futile. Yawger lied to dissuade plaintiff from filing a suit. (¶ 80) Yawger's narrative contradicted Koschman's friends' version of events. (¶ 41)

 Yawger refused to provide plaintiff with a copy of the case file saying that she would have to seek it through a Freedom of Information Act [FOIA] request. Yawger kept the investigation open knowing that would provide grounds to deny any FOIA requests. Yawger did this to prevent plaintiff from learning the true facts about her son's death. (¶ 81)

On May 19, 2004 police contacted the state's attorney's felony review unit [SAO] to get approval of charges. (¶ 69) The prosecutor who responded was Darren O'Brien, chief of the unit. (¶ 70) At lineups on May 20th, none of Koschman's three friends, by-stander or passerby witnesses

---

[1] O'Brien summarizes the allegations against him even though he disputes almost all of them, especially those that attempt to attribute, in a conclusory fashion, improper motives, procedures or actions to him. He recognizes that the court must accept as true the factual allegations, as utterly groundless as they may be, that are made against him at this stage of the proceedings.

were able to identify Vanecko. (¶¶ 67-68) The next day O'Brien re-interviewed witnesses to the case. Some witnesses (Koschman's friends) provided O'Brien with evidence that the 'big guy' was the aggressor. Some witnesses who had lied to police about Vanecko also lied to O'Brien (the McCarthys and Denham). (¶ 71) Vanecko refused to give a statement. (¶ 74) O'Brien either failed to take meaningful notes or destroyed them. (¶ 72) O'Brien never made a record in the SAO's "PROMIS" case-tracking database. O'Brien did these acts to obliterate evidence that inculpated Vanecko. (¶75) O'Brien did not approve felony charges against Vanecko. (¶ 76) Senior management at SAO approved and/or ratified his decision. (¶ 77) On March 3, 2011 O'Brien repeated a 'false narrative' of the April 25th events. (¶ 115-116)

<u>Allegations Not Made Against Darren O'Brien</u>

Plaintiff has only a 'heading' in her complaint (p. 15) where her cursory allegations of how O'Brien was 'involved in the cover up' can be found. Ms. Koschman, however, does not allege any facts that O'Brien conspired with anyone, how he kept the results of the investigation (and thus Vanecko's identity) from plaintiff or how he prevented her from suing in state court. She also fails to allege what 'evidence' O'Brien allegedly obliterated. O'Brien's notes (she says, 'in the alternative' that he didn't make any or destroyed them) (¶ 72) which are, either way, privileged attorney work product and not evidence. The complaint is a pastiche of sensationalism, conclusions, boilerplate and the bare elements of a claim, all of which are insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court is not obliged to accept conclusory allegations or conclusory statements 'couched' as factual allegations in deciding a 12(b)(6) motion. *Iqbal,* 556 U.S. at 678. Long before *Iqbal, Id.* conclusory allegations of a conspiracy have always been insufficient to survive a motion to dismiss. *House v. Belford*, 956 F.2d 711, 721 (7th Cir. 1992). The minimal facts of who, what and where about O'Brien's alleged involvement are not found in the complaint.

The other actors who O'Brien supposedly conspired with, his alleged role in the scheme to prevent Koschman from learning about Vanecko and his involvement (other than in a prosecutorial function) – all purportedly done to deny her access to the courts for filing a civil suit - are all missing. Ms. Koschman does not allege any facts that O'Brien fabricated or manufactured evidence or created witness statements to prevent her from suing in state court. She actually alleges that witnesses gave conflicting accounts to the police and later to O'Brien. (¶ 71) She also alleges that none of the eyewitnesses who cooperated with police could identify Vanecko. (¶¶ 67-68) Her complaint allegedly concludes that O'Brien 'knew Vanecko was the aggressor' though all her factual allegations also claim that there were conflicting versions of the events offered by the witnesses at every stage of the proceedings to O'Brien.

Ms. Koschman does not allege that the way O'Brien conducted his felony review or the failure to make a computer database entry afterwards prevented her from filing a wrongful death or battery case. Ms. Koschman does not allege she met or talked to O'Brien or asked him to identify the culpable parties. Plaintiff does not even allege that O'Brien knew she wanted to file a wrongful death or battery lawsuit. She alleges - in a bare conclusion – that O'Brien denied her access to the civil courts but fails to allege that she even intended on prosecuting an action (until 2014) or that O'Brien knew that was her intent. She also does not allege any facts how O'Brien's decision or actions in May of 2004 prevented her from suing in state court. She does not allege any facts how Darren O'Brien, exercising prosecutorial discretion in declining to approve felony charges against Vanecko in the face of conflicting evidence (by her own admission) impaired her constitutional right to file a civil suit in state court. She also fails to allege any facts or how, in the exercise of his official discretion, O'Brien intentionally inflicted emotional distress on her in violation of Illinois law.

Argument

I. O'Brien Had No Effect On Plaintiff's Right of Access to Illinois Civil Courts

Even if a state actor conceals important facts about a crime to prevent access to the civil courts, not all acts of deception give rise to a constitutional claim under 42 U.S.C. §1983. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1265 (7th Cir. 1984) overruled on other grounds by *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Deception by the state actor, to be actionable, must render the constitutional right to sue 'hollow.' *Bell*, 747 F.2d at 1261. In *Bell* police completely covered up the true nature of the case and concealed the illegal acts of responsible police from plaintiff for twenty years. Only the police knew what happened and kept it from the Bell family. This prevented Mr. Bell from obtaining meaningful relief in a civil action over the death of his sons at the hands of Milwaukee police officers. Nothing like that occurred here. Nothing O'Brien did prevented Ms. Koschman from learning what happened and the names of the other actors (she already knew her son's three friends). She claims O'Brien prevented her from knowing she had a suit, despite her son's friends' eyewitness evidence about the 'big guy.' She alleges she did not know she could pursue a cause of action because of O'Brien's acts, despite the certain effect of Yawger's revelation that Vanecko was protected by clout and her failure to act on that information. Instead she sues O'Brien who actually kept nothing from her. The information she needed to proceed was in the hands of many people – third parties including the friends of her deceased son - who were not police officers or friends of Vanecko. O'Brien did not do anything that kept her out of court.

In *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995) the court concluded that even though police covered up critical information about the incident and the culpable parties it did not render the right to sue 'hollow.' There was no constitutional injury there because the Vasquezes could have filed suit for damages despite the police cover up. The Vasquez's suspicions were raised and should have been raised long before the statute of limitations expired. The same is true of Ms. Koschman.

5

Even if what she says about O'Brien is true, she still could have filed suit. O'Brien is not alleged to have done anything that prevented or impaired Ms. Koschman's ability to initiate prosecution of a civil action in the state court. Other than screaming in her pleading that O'Brien denied her right of access to the courts, Ms. Koschman has not alleged a single fact how O'Brien, in the exercise of prosecutorial discretion, impaired her ability to walk into the circuit court and file suit.

No allegations appear because Darren O'Brien did not engage in any acts that affected Ms. Koschman's ability to sue in state court for the death of her son or rendered her right to do so 'hollow.' *Bell*, 747 F.2d at 1261. Neither she nor her late son had a constitutional right to have a criminal prosecution proceed against Vanecko. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 769 (2005). No one has the 'right' to have a criminal prosecution take place. At best, her allegations against O'Brien amount to a claim that he violated state laws (allegedly destroying evidence which she does not identify but based on her allegations is nothing more than his attorney work product) (¶ 72) or SAO regulations and practices (allegedly not making an entry in 'PROMIS' database) (¶ 75), none of which amount to actionable omissions under 42 U.S.C. 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (violation of state law or police procedure is not an actionable constitutional violation). Her strongest claim is that CPD Det. Yawger impaired her right to sue. Yet even her best and strongest claim does not withstand simple scrutiny because no reasonable person would have acted as she did once their suspicions were aroused. She had every reason to believe – based on her own allegations – that by late May 2004 a cover-up and undue influence were afoot.

According to Ms. Koschman's complaint her son's three friends all identified Vanecko, by description, as the aggressor. The witness agreed it was 'the big guy.' (¶ 67)  In late May after Ms. Koschman alleges she met with Yawger, she had every reason to believe that he was either withholding information or lying – by her own admission - due to clout. (¶ 80) When the detective allegedly told her that she was up against 'powerful forces,' the reference to clout and inappropriate

6

influence should have set the alarm bells ringing. It would have in the mind of any reasonable person.

Yawger's alleged lies did not square with what her son's friends were saying happened a month before. Certainly in June of 2004, right after she heard Yawger contradict her son's friends' stories, coupled with his refusal to give her a copy of the police file, Ms. Koschman could and should have filed a discovery petition in the circuit court against the City of Chicago and the CPD pursuant to Illinois Supreme Court Rule 224. Illinois Supreme Court provided Ms. Koschman an easy and effective method to have discovered the identity of Richard J. Vanecko (and anyone else whose roles she had questions about). All she had to do was ask a judge to order the production of that information.

> (i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for discovery.
> (ii) The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought… Ill. S. Ct. R. 224

Despite irreconcilable contradictions that should have put her on high alert, Ms. Koschman claims she took no action until March of 2014 when she filed the instant suit. While she can argue about the affect Yawger's yarn had on her rights, nothing Darren O'Brien did even remotely rendered Ms. Koschman's ability to sue in state court 'hollow.' Darren O'Brien did not lie to or deceive Ms. Koschman. She does not allege that anything he did impaired her right to sue or rendered it 'hollow.' All she alleges is that O'Brien exercised his prosecutorial discretion and – faced with conflicting witness testimony and inconclusive eye witness lineups – declined to approve felony charges against Vanecko. (¶ 76) None of this amounts to a violation of a protected constitutional right that gives rise to a claim she can recover on. She cannot prevail in any of her claims against Darren O'Brien since they all spring from the same core acts none of which could possibly have prevented her from suing Vanecko. The court should dismiss the complaint, with prejudice.

II. <u>The Claims Against O'Brien Are Untimely and Are Barred By the Statute of Limitations</u>

A. <u>Koschman Knew or Should Have Known of Her §1983 Claim By June 2004</u>

The statute of limitations for §1983 actions is two years. *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). Claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991). This lawsuit was filed on March 24, 2014, almost ten years, according to the plaintiff, since O'Brien refused to approve felony charges allegedly to thwart her civil suit (according to her). Suit was filed almost a decade after she was on notice in late May 2004 that clout, undue and inappropriate influence were involved in stopping the case. (¶ 76) It has been more than three years since the March 3, 2011 interview when O'Brien allegedly repeated the 'false narrative against her son' to continue to thwart her right to pursue a civil suit. (¶¶ 115-116) With these facts, the plaintiff has pled herself 'out of court' with the allegations she has made. Litigants may plead facts that establish a defendant's right to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). A court need not ignore facts in a complaint that defeat the claim. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). Ms. Koschman, in an effort to lash out in every direction against anyone and everyone who was at hand when 'the big guy' was not charged, has alleged facts that establish she cannot prevail against O'Brien in this litigation.

Plaintiff's allegations establish that a potential §1983 claim against O'Brien accrued on May 20, 2004 when he refused to approve felony charges and thus, according to her, prevented the filing of a civil suit against Vanecko. (¶ 76) She knew within days of O'Brien's making his decision – by late May 2004 according to her - that Yawger lied to her when he contradicted the story of her late son's three friends who fingered Vanecko – 'the big guy' - and told her that inappropriate clout – "powerful forces" - were involved in the case. (¶ 80) These two facts, pled by the plaintiff, establish that she either knew or should have known something was seriously amiss by the late May of 2004 after meeting with Yawger. She certainly knew, based on what she had learned in May of 2004, that

8

O'Brien's allegedly 'false narrative' of March 3, 2011 was a repeat of what he had said seven years before. This did not create any new claims; she already knew or should have known there may be a claim against O'Brien seven years earlier for the failure to approve felony charges. The statute of limitations on Plaintiff's claim under §1983 against O'Brien ran on May 20, 2006 – two years after he declined to approve charges. Whatever O'Brien said on March 3, 2011 and its import, did not erase Ms. Koschman's knowledge of the existence of a claim by late May 2004. Accordingly, her §1983 claim against O'Brien is barred by the statute of limitations and must be dismissed with prejudice.

B. <u>The Intentional Infliction of Emotional Distress Claims Are Untimely</u>

Plaintiff's claims in Count VI that O'Brien intentionally inflicted emotional distress (IIED) and in Count VII that O'Brien conspired to inflict emotional distress are both barred by the statute of limitations. The statute of limitations for state IIED claims is two years. 735 ILCS 5/13-202 (2014). This action was filed on March 24, 2014. The most recent allegation against O'Brien (assuming any are true and actionable) occurred on March 3, 2011, more than three years before suit. The first alleged acts of O'Brien occurred in late May, 2004 when plaintiff alleges he would not approve felony charges (to both thwart a civil suit and to inflict emotional injury on her she says). (¶ 76) O'Brien's last alleged act occurred on March 3, 2011 when he, according to plaintiff, 'repeated the false narrative about her son.' (¶¶ 115-116) The complaint's two state law IIED claims, filed on March 24, 2014, are well beyond the two-year statute of limitations than ran in 2006. Ms. Koschman appears to assume these barred claims were somehow revived or accrued anew on March 3, 2011 when, according to her, O'Brien repeated the 'false narrative.' There is no case that so holds. Even if there was, she waited more than three years after the last act to sue O'Brien despite a two year statute of limitations on IIED. The complaint, as to O'Brien, should be dismissed with prejudice since it is untimely.

III. O'Brien Is Absolutely Immunity For Prosecutorial Functions and Public Comments

Plaintiff's claims against O'Brien all arise from his refusal to authorize felony charges against Vanecko on May 20, 2004 and his public comments, to a lesser degree, on March 3, 2011. (¶¶ 76, 115-116) These claims all fail because in addition to the reasons discussed above, a prosecutor's decision to not approve felony charges and his public comments about a case are both shielded by absolute immunity.

In *Burns v. Reed*, 500 U.S. 478 (1991) the Supreme Court drew a line between the vulnerability of a prosecutor to suit for actions related to functions that are part of the judicial process and a prosecutor's exposure for acts related to other functions, non-prosecutorial acts, like investigation or the giving of legal advice. The rule reiterated by *Burns, Id.* is that prosecutors are entitled to absolute immunity from suit for all actions that are part of the prosecutorial function. The determination of whether to approve a criminal charge is a quasi-judicial prosecutorial function cloaked with absolute immunity from suit. *Spiegel v. Rabinovitz*, 121 F.3d 251, 257-8 (7th Cir. 1997); *Anderson v. Simon*, 217 F.3d 472 (7th Cir. 2000) (prosecutor's decision declining criminal charges is an absolutely immune prosecutorial function); *Hunt v. Jaglowski*, 926 F.2d 689, 693 (7th Cir. 1991) (prosecutor who was called in to take murder suspect's confession after police allegedly beat suspect was absolutely immune from § 1983 suit even though suspect told prosecutor of abuse and showed him his bruises). Ms. Koschman seeks to impose liability on O'Brien for his decision not to approve felony charges in the face of conflicting witness statements and eyewitnesses' inability to identify Vanecko. These are core prosecutorial functions. He is absolutely immune from the plaintiff's §1983 claims stemming from the actions he took. The §1983 claim, Count I, should be dismissed with prejudice.

Plaintiff also alleges that O'Brien should be held liable for 'furthering the false narrative' about the case. (¶¶ 115-116) There is no basis to impose liability for statements which arose from O'Brien's performance of his duties. Public prosecutors have an absolute privilege to comment on

issues within the scope of their employment. *Ware v. Carey*, 75 Ill. App. 3d 906, 913 (1st Dist. 1979) (prosecutor absolutely immune for defamatory comments arising from the performance of his duties); *Patterson v. Burge, et al.* 328 F. Supp. 2d 878, 901-2 (N.D. Ill. 2004) (prosecutors absolutely immune for allegedly false public comment; their motives are irrelevant). Ms. Koschman's claims that her right to file a wrongful death or battery suit was impaired or that O'Brien intentionally inflicted emotional distress when exercising his discretionary prosecutorial function do not state claims on which she can prevail. The court should dismiss Counts I, VI and VII as to O'Brien with prejudice.

IV. <u>A Conspiracy Claim Cannot Lie Against O'Brien As A Matter of Law</u>

A conspiracy is relevant, if one exists, only to meet the 'under color of state law' requirement in §1983 actions. The cause of action is for the constitutional deprivation and not the conspiracy. *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 (7th Cir. 1975) citing *Adickes v. Kress & Co.*, 398 U.S. 144, 150-52 & n. 7 (1970). A civil conspiracy is a combination of two or more persons acting in concert to either commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980), reh'g denied, 448 U.S. 913 (1980). None of the allegations Ms. Koschman makes about O'Brien amount to a conspiracy as a matter of law. O'Brien's acts, exercising prosecutorial discretion in refusing felony charges, are not and cannot be unlawful acts, the first form a conspiracy can take. The prosecutor's motivation and intent are not relevant (see Sec. III, above) if the act engaged in is part of the prosecutorial function. Even if the act is quasi-judicial, like approving or disproving criminal charges, it is cloaked with absolute immunity. *Burns v. Reed*, 500 U.S. 478 (1991). O'Brien's acts cannot be illegal as a matter of law since the U.S. Supreme Court has determined they are within core prosecutorial function.

Nor can O'Brien's acts denying felony charges against Vanecko be the second type of conspiracy because the means he used to reach his decision – re-interview of witnesses and relying on a line up – were not unlawful means used to make a decision. Even if the process was tainted, like the allegations against the prosecutor in *Hunt v. Jaglowski*, 926 F.2d 689 who allegedly used an illegally obtained confession, absolute immunity renders the acts legal as a matter of law. There is nothing in the complaint that would permit the court to even draw an inference that O'Brien engaged in any unlawful act or had used unlawful means. The shadow of conspiracy, even though it is pled in conclusion and not factually, that Ms. Koschman casts over the case does not affect O'Brien. The complaint against him should be dismissed with prejudice.

V. <u>O'Brien Was Not the Proximate Cause of Any Harm As A Matter of Law</u>

The general principles of tort liability also govern liability under 42 U.S.C. §1983. *Joseph v. Rowlen*, 425 F.2d 1010, 1013 (7th Cir. 1970). Causation is an essential element in all §1983 actions. To establish liability the victim must show that the wrongful act of the putative tortfeasor caused his injury. To be a legal cause of harm to another, the defendant's conduct must constitute a substantial factor in bringing about the injury. *Hibma v. Odegaard*, 769 F.2d 1147, 1155 (7th Cir. 1985) citing the Restatement (Second) of Torts §431. 'Substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility. *Hibma*, 769 F.2d at 1155. Applying these simple principles to the pending complaint mandates dismissal with prejudice because nothing O'Brien did could amount to legal causation. His decision could not possibly have caused the injury Ms. Koschman is alleging. O'Brien never had any contact with her. He did not deceive her, lie to her or keep anything from her. He did not even know (at least she does not at the moment allege) that she wanted to file a civil suit. Ms. Koschman never asked him for information. She never sought, via FOIA or any other means, the records in the SAO. Assuming

that the court even reaches this argument because it concludes the suit was timely and O'Brien is not absolutely immune, there is no factual scenario that could cause one to conclude that O'Brien's conduct constituted a substantial factor in bringing about the alleged injury. *Hibma v. Odegaard*, 769 F.2d 1147, 1155 (7th Cir. 1985). Nothing O'Brien did prevented Ms. Koschman from filing suit over her son's death. She knew that inappropriate influence – clout – was being exerted by late May of 2004 – after felony charges against Vanecko were denied and when Yawger told her powerful forces were lined up against her. O'Brien could not have been the proximate cause of her alleged injury as a matter of law and the complaint should be dismissed.

## VI. O'Brien Joins the SAO Defendants' Sovereign Immunity Argument in Their Motion to Dismiss

For the sake of consistent outcomes, should the court be receptive to the other SAO defendants' arguments that Illinois' sovereign immunity deprives this court of subject matter jurisdiction of the pendent state law IIED claims (Counts VI and VII) [SAO Def's Mot. to Dismiss, Docket #87, Sec. III, C. at p. 13], O'Brien joins in that portion of the motion and if the court grants same as to these other defendants would request that the court grant it as to him too.

## Conclusion

This is obviously a sad and tortured case with tragic circumstances. Despite assertions that her son's case was unconstitutionally corrupted by illegal influence (based solely on plaintiff's allegations and not because what she says is true) Ms. Koschman waited almost ten years to take legal action. Even if she can be legally 'forgiven' for ignoring what detective Yawger bluntly told her in late May 2004 she did not act timely. No matter how appalling some of the alleged conduct of some of the other actors maybe, Darren O'Brien does not deserve to be enmeshed in this fight. He exercised his prosecutorial discretion. Ms. Koschman does not allege he did anything untoward directed at her or that anything he did prevented her from suing. Despite solid information that evil forces, engaged in unconstitutional clout driven misconduct, were at work, she did nothing for

almost ten years. In the face of these allegations prosecutor O'Brien, cloaked with absolute immunity, cannot be liable. The case against him must be dismissed with prejudice.

Wherefore defendant Darren O'Brien moves that the complaint against him be dismissed and that he go hence, without day, and have his costs, so wrongfully sustained, reimbursed him.

June 2, 2014                                          Darren O'Brien, defendant

                                                     s/ Craig D. Tobin_____
                                                          Attorney for Darren O'Brien

Craig D. Tobin
Tomas Petkus
Sean M. Sullivan
Tobin & Muñoz, L.L.C.
Attorneys for Darren O'Brien
Three First National Plaza, Suite 1950
Chicago, Illinois 60602-4298
Office: (312) 641-1321
Fax: (312) 641-5220
Email:   ctobin@barristers.com
         tomaspetkus@barristers.com
         ssullivan@barristers.com
Web:     www.barristers.com

\\M1\clients\T&M\O'Brien adv. Koschman\Motions\motion, dis, f.docx

<u>Certificate of Service</u>

I hereby certify that I served the foregoing using the court's CM/ECF system which will send notification of such filing to the counsel of record.

June 2, 2014                                  s/ Craig D. Tobin_____
                                                  Defendant's attorney