**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NANCI KOSCHMAN, | ) | |
| Plaintiff, | ) | |
| | ) | 14 C 2041 |
| v. | ) | Honorable Judge |
| | ) | Rebecca Pallmeyer |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, Cook County State's Attorney Anita Alvarez, former Cook County State's Attorney Richard Devine and First Assistant Cook County State's Attorney Daniel Kirk (collectively, the "SAO Defendants") and Cook County, by their attorney, Anita Alvarez, State's Attorney of Cook County, through Daniel F. Gallagher, Donald J. Pechous, Lisa M. Meador, Thomas E. Nowinski, and Michael J. Pasquinelli, Assistant State's Attorneys, hereby submit their Reply in Support of Defendants' Motion to Dismiss Plaintiff's Complaint as follows:

**INTRODUCTION**

Plaintiff's arguments in opposition to dismissal revolve entirely around her contention that there was "a barrier to a fair disposition of [her] wrongful death claim…" which "was not removed until Vanecko's conviction on January 21, 2014." Plaintiff's Consolidated Memorandum In Opposition To All Defendants' Motions To Dismiss ("Plaintiff's Response"), p. 22. Plaintiff contends that without the conviction of R.J. Vanecko, she would never receive fair adjudication of her tort claims. More to the point, this contention is fatal to Plaintiff's claims as it establishes two essential points:

- Plaintiff's legally groundless position that a criminal conviction of Vanecko is a necessary prerequisite for any civil action for the death of David Koschman and

- Plaintiff's tacit concession that she could have filed a civil suit based upon the knowledge and information that she previously had.

If Plaintiff did not timely avail herself of the available State law remedy, it was solely because she elected not to do so.

Through her tacit concession that she had the necessary knowledge to bring a wrongful death suit in a timely fashion, Plaintiff undermines her own theory of the case and actually supports the position of the SAO Defendants that she cannot state a claim upon which relief can be granted and that the statute of limitations and various privileges and immunities bar her claims. Accordingly, Plaintiff's Complaint against the SAO Defendants should be dismissed with prejudice.

## I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Plaintiff Fails to Sufficiently Plead a Cause of Action Under § 1983

Plaintiff's Complaint fails to state a cause of action upon which relief can be granted because the § 1983 claim fails to allege any action on the part of the SAO Defendants that could constitute a constitutional deprivation and Plaintiff has not properly stated a claim for denial of access to the courts. Plaintiff cannot identify the specific constitutional right which was allegedly violated by the SAO Defendants because she has not, and cannot, demonstrate a right, owed to her specifically, requiring the State's Attorney to bring criminal charges against Defendant Vanecko.

It is well-established that the State's Attorney has the exclusive discretion to initiate and manage a criminal prosecution and this discretion includes the decision whether or not to prosecute at all. *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45-46 (1983)(citations omitted). Further, an individual does not have a constitutional right to a criminal prosecution. *Town of*

*Castle Rock v. Gonzales*, 545 U.S. 748, 769 (2005). Even if Plaintiff properly alleged that she suffered a constitutional deprivation that denied her access to the courts (which she has not), Plaintiff fails to allege that the SAO Defendants prevented her from learning about her son's death or about the altercation between her son and Vanecko, or that the SAO Defendants prevented her from filing a state law wrongful death action. Plaintiff fails to address these arguments.

Significantly, Plaintiff ignores the fact that Plaintiff's Complaint rests her denial of access to the court claim on the contention that the SAO Defendants failed to file charges against Defendant Vanecko which prohibited her from pursuing a civil claim regarding her son's death. Perhaps recognizing that this claim is legally untenable, Plaintiff now contends that the focus of the liability is for making statements to the media and for all of the actions of the alleged co-conspirators. Such claims, however, are insufficient to plead liability as to the SAO Defendants and are belied by the arguments in Plaintiff's own brief. *See Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006) (conspiracy "differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant").

Throughout Plaintiff's Response, she argues that the alleged barrier to her being able to fairly adjudicate her wrongful death claim could only be remedied by Vanecko's prosecution and conviction. Plaintiff argues that her claims are not about the failure to prosecute Vanecko while wholly relying on the prosecution of Vanecko as the single event which opened the door to pursue a wrongful death claim. Plaintiff argues that it's not about the failure to prosecute Vanecko; yet, that is the singular issue upon which Plaintiff relies to support her claims. Plaintiff avoids addressing this hurdle because it is one which she cannot surmount. The decision whether to prosecute a criminal matter lies solely with the State's Attorney and a private citizen cannot

3

claim any constitutional deprivation based upon that discretion. *See, People ex rel. Daley v. Moran*, 94 Ill. 2d at 45-46.

Plaintiff seeks to hold the SAO Defendants liable for all of the acts of the alleged co-conspirators. However, she has not and cannot plead a sufficient basis for doing so. Mere bald assertions are insufficient to link those allegations to the SAO Defendants. *Loubser,* 440 F.3d at 442-43. All that Plaintiff has alleged is that the SAO Defendants, within their prosecutorial discretion, declined to bring criminal charges against Vanecko or made false statements relevant to their declination. There is no causal link between the conditions precedent as alleged by Plaintiff that Vanecko must be prosecuted and her ability to file suit. As such, Plaintiff fails to state a claim upon which relief can be granted and, accordingly, her § 1983 claims should be dismissed.

## B. Plaintiff Fails to Sufficiently Plead State Law Tort Claims

Plaintiff's claims for intentional infliction of emotional distress and conspiracy against the SAO Defendants rest on compound allegations leveled at a possible total of 33 defendants without specification of time, place, or actions by the individual actors. Again, Plaintiff seeks to hold the SAO Defendants liable for all of the acts of the alleged co-conspirators and her mere bald assertions are insufficient to link those allegations to the SAO Defendants. The Seventh Circuit has held that under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A*., 614 F.3d 400, 404 (7th Cir. 2010). Plaintiff's attempt to plead state law tort claims against the SAO Defendants does not satisfy the *Swanson* standard and, on this basis alone, those claims should

4

be dismissed.

C.      **Plaintiff's Claims Against The County Of Cook Fail As A Matter Of Law**

Plaintiff's Response focuses on an indemnification claim against the County of Cook (the "County") which is not pled in the Complaint and ignores the substantive claims against the County that are actually pled. Plaintiff's Complaint is rife with acts, allegations and substantive claims directed at the County and the SAO itself. Plaintiff's Complaint co-mingles allegations against these two entities and uses the names interchangeably even though they are separate legal entities and the State's Attorney's Office is not a named defendant. For example, Plaintiff alleges that "Cook County is a governmental entity within the State of Illinois which consists in part of its Cook County State's Attorney's Office." (Complaint, ¶28) Further, Plaintiff's Complaint improperly alleges that Cook County is the employer of the SAO Defendants. *Biggerstaff v. Moran*, 284 Ill. App. 3d 196, 201-202 (1st Dist. 1996) (holding that the Cook State's Attorney and her Assistant State's Attorneys are not employees of Cook County).

Plaintiff's Response fails to address any of these issues and now claims that the sole purpose of including Cook County is for indemnification only. If such is the case, Plaintiff's Complaint fails to so properly plead. In fact, the only indemnification count in the Complaint is directed at the City of Chicago.

## II.      THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS

A.      **Plaintiff's Claims Fail As A Matter Of Law And Reliance On *Bell v. City of Milwaukee* Is Inappropriate**

In response to Defendants' Motion to Dismiss, Plaintiff relies almost exclusively on *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), such that a discussion of *Bell* is prudent. Plaintiff's reliance on *Bell* is inapposite to the analysis of Plaintiff's claims in the instant matter. The holding in *Bell* was so fact-specific and fact-driven that its application to access to court

cases, including the instant matter, is impossible. Plaintiff fails to note that the portion of the *Bell* decision upon which she relies was only a minor holding of that case and that the thrust of the opinion was overruled in *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) ("We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action.")

The Seventh Circuit recently acknowledged the difficulty in applying the holding in *Bell*, stating that "[it has] not had many occasions to apply the reasoning of *Bell* in the thirty years since its issuance, and that is as it should be. Extraordinary circumstances called for an extraordinary resolution." *Cannon v. Burge*, 752 F.3d 1079, 2014 U.S. App. LEXIS 9719, *47 (7th Cir. May 27, 2014). After noting the uniqueness of *Bell*, the *Cannon* court distinguished *Bell* on the facts. The *Cannon* court highlighted the fact that unlike the plaintiffs in *Bell*, Cannon had sufficient knowledge of the facts to enable him to promptly file his lawsuit because he was present for the underlying actions, whereas in *Bell*, only the defendant officers' side of the story existed. *Cannon*, 2014 U.S. App. LEXIS 9719 at *55, 56. Consequently, the court found that *Bell* was inapplicable and affirmed the dismissal of the plaintiff's claim for denial of access to the court. *Id*. at *71.

Moreover, a fair reading of *Bell* clearly reveals the crucial nature of the facts unique to that case. In *Bell*, the Seventh Circuit systematically set forth the facts that were not known, and could not have been known, to plaintiffs surrounding their brother's death. In that case, the court emphasized that "[a]fter the reckless and completely inexcusable killing by a police officer, instead of searching for and revealing the true circumstances, the conspirators did everything in their power to cover up and conceal the facts within their control, and that efforts of the Bell

family to learn the truth were rebuffed." *Bell*, 746 F.2d at 1264. The court noted that the facts surrounding the killing of Daniel Bell were in the sole province of members of the Milwaukee police department, and that two officers intentionally lied and concealed the true facts. *Id.* at 1262.

Similar to the claims in *Cannon*, Plaintiff's claims are distinguishable from *Bell*. Here, unlike in *Bell*, the facts surrounding the death of Plaintiff's son are not, and have never been, in the sole province of any of the defendants, let alone the SAO Defendants. Most significantly though, unlike the plaintiffs in *Bell*, Plaintiff had sufficient knowledge of the facts to enable her to promptly file her lawsuit. To be sure, friends of Plaintiff's son were present for the altercation, personally observed what happened, and were available to share that knowledge with Plaintiff. Unlike the Bell family who with their beliefs of the facts alone were deprived of a fair opportunity to seek redress by the virtue of the defendants' fraudulent concealment of facts crucial to the fair disposition of the dispute, Plaintiff in this case was not left with her beliefs alone. Rather, Plaintiff knew that her son was pushed or punched by Defendant Vanecko and died as a result. Those facts are not in dispute and have never been in dispute. Unlike *Bell*, the SAO Defendants never lied about the facts in this case and never created false facts of what happened. Accordingly, contrary to Plaintiff's assertions, *Bell* is not controlling and does not dispose of Defendants' Motion to Dismiss.

## B. Plaintiff's § 1983 Claim Is Time Barred

Plaintiff's claims are time-barred and *Bell* does not defeat Defendants' arguments. Initially, it should be noted that Plaintiff fails to address the SAO Defendants' arguments that her denial of access claims against Devine, Alvarez, and Kirk are time-barred. Rather, Plaintiff only addresses the arguments of the City Defendants and Defendant O'Brien. Accordingly, this Court

may dismiss Plaintiff's Complaint against the SAO Defendants based solely upon Plaintiff's lack of response. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (a litigant "waives an argument by failing to make it before the district court"); *see also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (noting that a complaint may satisfy the notice pleading requirements of Rule 8(a)(2) and still be subject to dismissal if a plaintiff does not file a brief supporting the legal adequacy of his claims). Assuming, *arguendo*, Plaintiff's arguments as to the other defendants were applied to the SAO Defendants, Plaintiff inappropriately relies on *Bell* and cannot overcome the time bar to her claims.

In her response, Plaintiff contends that her claims are timely because, "*Bell* holds that in a denial-of-access case, the statute of limitations begins to run on the date the official cover-up is defeated and the 'formidable barrier' to the fair resolution of the plaintiff's case is removed." (Plaintiff's Response, p. 22) However, notwithstanding the fact that the *Bell* decision is readily distinguishable from the instant case, Plaintiff misreads the holding in *Bell* as it relates to statutes of limitation. Contrary to Plaintiff's contentions, *Bell* does not hold that the statute of limitations begins when the official cover-up is defeated. To be sure, *Bell* does not say when the statute of limitations begins to accrue for a claim of denial of access to the courts. On the contrary, as noted by the SAO Defendants in their Motion to Dismiss, it is widely held that a § 1983 claim accrues at the point when the plaintiff knows or has reason to know of the injury that is the basis of his action. See *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002)(indicating that a federal claim "accrues when the plaintiff knows both the existence and cause of his injury" and that a claim does not accrue "at a later time when [the plaintiff] also knows that the acts" can support a cognizable legal claim). Plaintiff argues in her response, and is asking this Court to acknowledge, that she would not have gotten fair adjudication of her wrongful death cause of

action against Vanecko without *both* his prosecution and conviction. When taken to its logical conclusion, this baseless argument would lead to an absurd result: no estate could seek civil redress for the wrongful death of a decedent until someone was criminally prosecuted and convicted for his or her death. Not surprisingly, Plaintiff cites no legal basis for this incongruous proposition.

Plaintiff argues that "her beliefs alone could not bring down the barriers that the defendants had erected to prevent her from holding Vanecko responsible for her son's death" and that had she timely filed her claim "these same defendants would have stood by their fraudulent investigation and would have used it to defeat [her] claims…" (Plaintiff's Response, p. 25) Plaintiff's argument is based wholly on speculation that is not supported in fact and is solely an attempt to excuse her failure to timely file her wrongful death claim.

Rather than be subject to the statute of limitations provided for under the law, Plaintiff seeks to have this Court expand the law to provide that the statute of limitations for filing a wrongful death cause of action does not begin to accrue until an individual is convicted in a related criminal matter and/or until the plaintiff believes they will receive a fair shake in civil court. Surely Plaintiff would not argue that in the event of an acquittal in the criminal matter, she would be forever barred from pursuing a civil remedy. "[B]ecause different standards of proof are involved, acquittal in [a] criminal action does not bar a civil suit based on the same facts." 2 A. Wright, Federal Practice & Procedure § 468 at 315 (2000). *See Dowling v. United States*, 493 U.S. 342 (1990); *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938). Vanecko's conviction had no operative effect on the accrual of Plaintiff's cause of action. A different conclusion is untenable.

Even accepting Plaintiff's arguments that the statute of limitations began when the "barrier to a fair disposition was removed," the controlling date is not the date of Vanecko's

conviction, but rather the date Plaintiff had enough knowledge of the facts to vindicate her son's death. *Massey,* 312 F.3d at 276. The SAO Defendants maintain that Plaintiff had that knowledge at the latest in March 2011. However, as argued by the City Defendants, Plaintiff certainly had that knowledge no later than when she filed her Petition for Appointment of a Special State's Attorney in December 2011. Either way, the § 1983 claims are time barred.

Problematic for Plaintiff is the fact that if a barrier existed, although one never actually did exist, that barrier was not erected by the defendants, and particularly not by the SAO Defendants. The SAO Defendants never hid the fact that Vanecko punched or pushed Plaintiff's son. The SAO Defendants never hid the identities of the eye witnesses or kept Plaintiff from speaking to those witnesses, who notably were her son's friends. Plaintiff simply has not and cannot demonstrate that the SAO Defendants thwarted her ability to file suit in any way. Accordingly, Plaintiff's claim under Section 1983 was not timely filed and must be dismissed.

### C. Plaintiff's State Law Claims Are Time Barred

In her Response, Plaintiff argues that her state law claim of intentional infliction of emotional distress ("IIED") is not barred by the statute of limitations because IIED is a "continuing tort." In support of that argument, Plaintiff states that the statute of limitations begins to run at the time the last injurious act occurs or the conduct is abated." *See Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 285 (2003). Plaintiff then makes the leap that the conduct in this case was not abated until the "cover-up came to light" and Vanecko was convicted on January 21, 2014. (Plaintiff's Response, p. 30) However, Plaintiff provides no argument, and pled no facts in her Complaint, to support such a conclusory statement. Plaintiff has not pled, and cannot plead, facts that support the conclusion that Vanecko's decision to plead guilty exposed any alleged "cover-up" because while Vanecko's guilty plea may be evidence that he admitted to criminal

liability, it is not evidence that the lack of criminal prosecution and conviction of Vanecko was made in an effort to deny Plaintiff judicial redress.

The last overt acts of the SAO Defendants, as pled by Plaintiff in her Complaint, occurred in 2004 on the part of Richard Devine and in 2011 by Anita Alvarez and Daniel Kirk. Thus, even giving Plaintiff the benefit of the last overt act, her claims are well past the statute of limitations and should be dismissed.

Plaintiff's reliance on malicious prosecution cases is also unavailing. As discussed above, there is no connection between Vanecko's conviction and Plaintiff's ability to file a wrongful death suit. Unlike a malicious prosecution lawsuit where an acquittal or reversed conviction is a condition precedent to filing such a suit, a criminal conviction is not, and never has been, a condition precedent to filing a wrongful death or battery lawsuit. To be sure, Plaintiff is again relying on the contention that the SAO should have prosecuted Vanecko and thus her cause of action did not accrue. However, as discussed above and in the Motion to Dismiss, a charging decision is solely in the discretion of the SAO and the SAO, and any of its employees, are immune for that decision. Accordingly, the date of Vanecko's conviction is of no moment to Plaintiff's state law claims. Those claims are time-barred.

## III. VARIOUS PRIVILEGES AND IMMUNITIES PROHIBIT PLAINTIFF'S CLAIMS AGAINST THE SAO DEFENDANTS

### A. The SAO Defendants Are Immune From Suit For Declining To Bring Criminal Charges

As established in the Motion to Dismiss, Plaintiff's claims against the SAO Defendants fail because a prosecutor's decision not to file criminal charges is entitled to absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409 (1976). As discussed above, Plaintiff now claims that the focus of the allegations against the SAO Defendants is not their failure to

prosecute Vanecko, but rather the statements to the media regarding that decision as well as all of the acts of the alleged co-conspirators. Again, such arguments are belied by Plaintiff's Complaint and the admissions in Plaintiff's Response. Plaintiff inextricably links liability of the SAO Defendants on her claim that had Vanecko been prosecuted she would have timely filed her wrongful death claim. In fact, Plaintiff pleads that the only way she could pursue a wrongful death claim was to first secure Vanecko's prosecution. Plaintiff now attempts to retreat from such reliance in her Complaint and change her theory in her Response. Plaintiff cannot claim that all of the wrong acts were caused by the SAO Defendants' failure to prosecute Vanecko but then claim that she is not seeking liability against them for that decision when faced with a bar to her claims. It is firmly established that a state's attorney's decision to prosecute, or not prosecute, a case is entitled to absolute immunity. *See Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000) (holding that the "decision not to charge is entitled to absolute immunity"). The SAO Defendants are absolutely immune from suit based upon such allegations.

> **B.** **The SAO Defendants Had An Absolute Privilege To Comment On The Criminal Investigation Into The Death Of David Koschman**

Putting aside the issue of absolute, prosecutorial immunity, Plaintiff's tort claims face another hurdle: the SAO Defendants' absolute privilege to comment on investigations and prosecutions bars all of Plaintiff's tort claims based upon public statements. Plaintiff alleges the SAO Defendants "made numerous false public statements about the David Koschman case," (Complaint, ¶¶173 and 177) and that State's Attorney Alvarez made false statements about this matter (Complaint, ¶¶113, 114, 118 and 119). Plaintiff does not refer to any alleged statements of former State's Attorney Devine or ASA Kirk although Plaintiff does allege that State's Attorney Alvarez and ASA Kirk instructed former Assistant State's Attorney Darren O'Brien to "further a false narrative against David Koschman." (Complaint, ¶¶115, 116)

12

In her response, Plaintiff argues that under *Buckley v. Fitzsimmons*, 509 U.S. 259 (1994), a prosecutor does not have absolute immunity for statements made to the press regarding a criminal prosecution and that the SAO Defendants' claim of privilege is unfounded. (**Plaintiff's Response, p. 38**) Plaintiff, however, conflates the concept of absolute, prosecutorial immunity to suit (as discussed in *Buckley*) with the principle of common law being asserted by the SAO defendants which confers an absolute privilege on communications made by officials of the executive branch of government. Here, Plaintiff tries to analyze statements made by prosecutors to the press solely under prosecutorial immunity law. However, executive privilege extends beyond prosecutorial immunity and may be successfully asserted by any government official. *See Spalding v. Vilas*, 161 U.S. 483 (1896) (Postmaster General), *Dolatowski v. Life Printing and Publishing*, 554 N.E.2d 692 (1st Dist. 1990) (Deputy Police Superintendent), *Geick v. Kay*, 603 N.E.2d. 121 (2nd Dist. 1992) (Village Board President), *Springer v. Harwig*, 418 N.E.2d. 870 (1st Dist. 1981) (Village Manager). The privilege has also been applied to State's Attorney and Assistant State's Attorneys who comment on **prosecutions or potential prosecutions**. *See Ware v. Carey*, 394 N.E.2d 690 (1st Dist. 1979); *Patterson v. Burge*, 328 F. Supp. 2d 878, 902 (N.D. Ill. 2004) (Gottschall, J.) (following *Ware* and holding that under Illinois law, "[p]rosecutors in the Illinois State's Attorney's Office have an absolute privilege to comment on issues within the scope of their employment").

None of Plaintiff's allegations against the SAO Defendants about their unspecified statements to the press are actionable because of the absolute privilege to comment that the courts in *Ware* and *Patterson* correctly recognized. Without this absolute privilege, State's Attorneys would refrain from speaking publicly about their charging decisions in a particular case. In arguing that this privilege does not require the involuntary dismissal of Plaintiff's IIED

claims against the SAO Defendants, Plaintiff has proposed a legal standard that would chill future state's attorneys from discussing prosecutorial decisions with the public. Such a result is poor public policy and is contrary to the decisions in *Ware* and *Patterson*.

In opposition to *Ware* and *Patterson*, Plaintiff argues that ***Rivera v. Lake County***, 974 F. Supp. 2d 1179 (N.D. Ill. 2013) (Leinenweber, J.) defeats the SAO Defendants' assertion of an absolute privilege to comment. Plaintiff's reliance on *Rivera* is misplaced. In *Rivera*, the allegations contend that the prosecutor made statements long after his involvement in the criminal case was over and did not make such statements within the scope of his employment. *Id*. at 1196. The instant case is readily distinguishable from *Rivera*. Here, the SAO Defendants made statements during the pendency of a criminal investigation and before any criminal case had gone forward. Moreover, the SAO Defendants' statements incontrovertibly arose from the performance of their duties specifically related to the State's investigation of David Koschman's death. In fact, Plaintiff's Complaint characterizes these statements as "official public statements" made by the SAO Defendants. (Complaint, ¶¶ 119, 147) The court in *Rivera* recognized "the need to give prosecutors wide latitude to 'inform public opinion as to the quality of service rendered by public officials.'" *Id*. at 1196 *quoting Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 776 (N.D. Ill 2012). Each and every comment alleged relates solely to issues within the scope of the SAO Defendants' employment, for which they are absolutely immune from civil action. *See Patterson*, 328 F. Supp. 2d at 902.

C.     **The Illinois Court Of Claims Has Exclusive Jurisdiction Over Plaintiff's State Law Tort Claims Against The SAO Defendants.**

Putting aside both prosecutorial immunity and the absolute privilege to comment, Plaintiff's state law tort claims face one final, insurmountable hurdle: sovereign immunity. This Court lacks subject matter jurisdiction over Plaintiff's state law claims as the Illinois Court of Claims has exclusive jurisdiction over all state law tort claims made against Assistant State's Attorneys for tort damages for acts within the scope of their employment. *See Horstman v. County of DuPage*, 284 F.Supp.2d 1125, 1130-31 (N.D. Ill. 2003), *citing Ingemunson v. Hedges*, 133 Ill.2d 364 (Ill. 1990); 705 ILCS 505/8(d) (2014); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *White v. City of Chicago*, 369 Ill. App. 3d 765, 779 (1st Dist. 2007). Plaintiff fails to address this argument in its entirety.  Once again, Plaintiff apparently concedes the point.

## <u>CONCLUSION</u>

WHEREFORE**,** Plaintiff's Complaint should be dismissed with prejudice pursuant to Rules 12 (b)(1) and Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     *s/Lisa M. Meador*
        Lisa M. Meador
        Daniel F. Gallagher
        Donald J. Pechous
        Thomas E. Nowinski
        Michael J. Pasquinelli
        Assistant State's Attorneys
        500 Richard J. Daley Center
        Chicago, Illinois 60602